# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| RESONANT SYSTEMS, INC., d/b/a RevelHMI, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 2:22-cv-00424-JRG LEAD CASE |
| v. | § § | JURY TRIAL DEMANDED |
| SONY GROUP CORP. and SONY INTERACTIVE ENTERTAINMENT INC., | § § § | |
| *Defendants.* | § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## OF NON-INFRINGEMENT OF THE ASSERTED PATENTS

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     SUMMARY JUDGMENT STANDARDS .........................................................1

III.    STATEMENT OF THE ISSUES .........................................................................2

IV.     SUMMARY OF THE ALLEGED INVENTION ...............................................2

V.      STATEMENT OF UNDISPUTED FACTS ("SOF") .........................................4

VI.     ARGUMENT .......................................................................................................9

    A.  THE COURT'S CLAIM CONSTRUCTION REQUIRES THAT THE "CONTROL COMPONENT" MUST BE "CONTAINED WITHIN THE VIBRATING MODULE" ...........................................................10

    B.  THE ACCUSED PRODUCTS DO NOT INCLUDE "A CONTROL COMPONENT" THAT IS "CONTAINED WITHIN THE VIBRATING MODULE" ................................................................12

    C.  RESONANT'S INFRINGEMENT THEORIES ARE BASED ON ███████████████████ ███████████████████████████████████████ ...........................................14

VII.    CONCLUSION ..................................................................................................17

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## <u>TABLE OF AUTHORITES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247– 48 (1986)......................................................1

*Celotex v. Catrett*, 477 U.S. 317, 322 (1986) .................................................................................1

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000 ........2

*Yufa v. TSI, Inc.*, 652 Fed. Appx. 939, 944 (Fed. Cir. 2016 ...........................................................2

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................................3

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.    INTRODUCTION

Resonant cannot present its case at trial without violating both the rationale and the express words of the Court's Claim Construction Order.  As the Court found, the Asserted Claims all require the structure of the "control component" to be "contained within the vibrating module." Resonant identifies the DualSense, DualSense Edge, and PSVR2 Sense controllers ("the Accused Controllers") as the allegedly infringing "vibration modules." However, Resonant must rely on features of the PlayStation 5 console, which is undisputedly not "contained within the vibrating module," to meet the structure and function of the "control component" limitations. Relying on a "control component" that is not "within the vibration module" is directly contrary to the Court's claim construction, and the disclaimer that formed the basis for that construction. Summary judgment is warranted under these facts.

## II.    SUMMARY JUDGMENT STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247– 48 (1986). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id*. at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Where,

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

as here, the moving party does not have the ultimate burden of persuasion at trial, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Yufa v. TSI, Inc.*, 652 Fed. Appx. 939, 944 (Fed. Cir. 2016) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). A party opposing a motion for summary judgment on a claim for which it carries the burden of proof must present evidence sufficient to prove each element of that claim to avoid summary judgment. *Celotex*, 477 U.S. at 322-23.

## III.   STATEMENT OF THE ISSUES

1.      Whether the DualSense, DualSense Edge, and PSVR2 Sense controllers ("the Accused Controllers") do not infringe where the Court's claim construction requires a "control component" that is "contained within the vibrating module" and it is undisputed that the Accused Controllers are not programmed to perform the required algorithm cannot perform the claimed function without receiving instructions from a separate unit, namely the PlayStation 5 console.

## IV.   SUMMARY OF THE ALLEGED INVENTION

The Asserted Patents are titled "Linear Vibration Modules and Linear-Resonant Vibration Modules." The '081 and '830 Patents are continuations of the '337 Patent, sharing the same specification.[1] The Asserted Patents are "directed to various linear vibration modules ('LRMs'), including various types of linear-resonant vibration modules ('LRVMs'), that can be used within a wide variety of different types of appliances, devices, and systems, to generate vibrational forces." '337 Patent at 4:13-17. "Fig. 6 provides a block diagram of the LRVM," and includes,

---

[1] Because the Asserted Patents share a common specification, all citations are to the '337 Patent unless noted otherwise.

2

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

among other things, a CPU (red), user controls (purple), a power supply (yellow), an H-bridge switch (blue), and a coil (green):



*Id.* at Fig. 6 (emphasis added).

In operation, the user controls "generate signals input to the CPU 608-610." *Id.* at 6:24-25. "The power supply 612 receives a control input 624 from the CPU to control the current supplied to the H-bridge switch 618 for transfer to the coil 626." *Id.* at 6:33-35. ***The CPU [of the vibration module] executes a control program "that controls operation of [the vibration module* .]" *Id.* at 6:43-47 (emphasis added). The control program sets local variables to default values, including "(1) mode, which indicates the current operational mode of the device; (2) strength, a numerical value corresponding to the current user-selected strength of operation, corresponding to the electrical current applied to the coil[.]" *Id.* at 6:50-55. When the control program determines that "a change in the user controls has occurred," it sets the variables mode and strength "to the currently selected mode and vibrational strength, represented by the current states of control features in the user interface," and "computes an output value p corresponding to the currently

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

selected strength, stored in the variable strength, and outputs the value p to the power supply so that the power supply outputs an appropriate current to the coil." *Id.* at 8:11-20.

## V.    STATEMENT OF UNDISPUTED FACTS ("SOF")

1.    Resonant accuses the DualSense, DualSense Edge, and PSVR2 Sense controllers ("Accused Controllers") of infringing the following claims: claim 2 of U.S. Patent No. 8,860,337 (the "'337 Patent"), claims 1, 2, 7, 8, and 17 of U.S. Patent No. 9,369,081 (the "'081 Patent"), and claims 1, 2, 7, 8, 15, 17, and 20 of U.S. Patent No. 9,941,830 (the "'830 Patent") (collectively, the "Asserted Patents" and the "Asserted Claims"). Ex. 1 (Baker Opening Rpt.) at ¶ 77, ¶142, ¶ 186, ¶ 232; Ex. 2 (Baker Dep. Tr.) at 32:11-15.

## Claim Construction and Disclaimer

2.    The Court entered the following claim construction in this case for the "control component" limitations of the Asserted Patents:

> In sum, for each of the claims at issue, the Court holds the "control component" limitation is subject to 35 U.S. C. § 112 ¶ 6, and that the agreed recited function is "controlling supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by [user input received from the user-input features / one or more stored values]," as agreed to by the parties. Furthermore, the Court adopts Sony's proposed corresponding structure, which accounts for the disclaimer:
>
> an oscillator circuit, a microcontroller with internal or external memory, a processor, a CPU, or a microprocessor <u>contained within the vibrating module</u> where the microcontroller, processor, CPU, or microprocessor are programmed with an algorithm comprising the following steps: (a) set the mode and strength to [default values or] values representing selections made by user input to the user input features; and (b) provide a corresponding output to the power supply so that the power supply provides a corresponding output to the driving component and equivalents thereof.

Dkt. 107 (Claim Construction Order dated August 27, 2024) at 15-16 (emphasis added).

3.    As noted in the Court's Claim Construction Order, during the prosecution of the '830 Patent, applicants argued the following:

4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

However, the controller of Houston resides in a computer, and is separate from the vibrating device; see, e.g., Fig. 38 and the text associated with Fig. 38. Thus, the stored values of Houston are not in the same module as the vibrating device. In other words, the sensations felt by a user 626 are sent by a system controller 622 to a haptic interface 624.

These are separate units and not contained in a vibration module and thus is in contrast to the language of Applicants' claim 1, which recites that the "vibration module [comprises] … [the] control component … to cause the moveable component to oscillate at a frequency and amplitude specified by one or more stored values."

Ex. 3 (Response dated October 23, 2017) at 3-4; *see also* Dkt. 107 at 12.

**Operation of the Accused Controllers**

4.      The Accused Controllers require s█████████████████████████████ ████████████████████████████████ Ex. 1 (Baker Opening Rpt.) at ¶¶ 114-117; Ex. 4 (Welch Rebuttal Rpt.) at ¶¶ 47-59, ¶ 65, ¶¶ 72-79; Ex. 5 (Igarashi Dep. Tr.) at 39:5-9, 59:22-60:1; Ex. 6 (Imada 6/20/2024 Dep. Tr.) at 19:3-10, 51:18-24, 66:25-67:15.

5.      The Accused Controllers ███████████████████████████████ ████████████████████████████. Ex. 2 (Baker Dep. Tr.) at 152:15-153:4,157:16-158:4; Ex. 5 (Igarashi Dep. Tr.) at 39:5-9, 59:22-60:1; Ex. 6 (Imada 6/20/2024 Dep. Tr.) at 19:3-10, 66:25-67:15; Ex. 4 (Welch Rebuttal Rpt.) at ¶¶ 87-88.

6.      The PlayStation 5 console is a separate electrical unit from the Accused Controllers. Ex. 2 (Baker Dep. Tr.) at 142:12-16.

7.      The Accused Controllers are used to play games running on the PlayStation 5 console. Ex. 1 (Baker Opening Rpt.) at ¶ 130; Ex. 4 (Welch Rebuttal Rpt.) at ¶ 87.

8.      The Accused Controllers include several user input devices, such as buttons, triggers, analog sticks, and/or touchpads. Ex. 1 (Baker Opening Rpt.) at ¶ 97; Ex. 4 (Welch Rebuttal Rpt.) at ¶ 28, ¶ 60, ¶¶ 66-68.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

9.     The Accused Controllers send the user's inputs (e.g., button presses) to the PlayStation 5 console either via Bluetooth or USB. Ex. 2 (Baker Dep. Tr.) at 151:2-22, 168:5-9.

10.     ████████████████████████████████████████

████████████████████████████████████████████

███████. 1 (Baker Opening Rpt.) at ¶ 114, ¶ 116, ¶164, ¶ 206, ¶ 253; Ex. 2 (Baker Dep. Tr.) at 165:13-166:5; 168:5-169:12, 180:14-181:2; Ex. 4 (Welch Rebuttal Rpt.) at ¶¶ 47-55, ¶ 65, ¶¶ 72-75, ¶¶ 124-125.

11.     ████████████████████████████████████████

████████████████████████████████. Ex. 2 (Baker Dep. Tr.) at 182:10-15; Ex. 4 (Welch Rebuttal Rpt.) at ¶¶ 124-125.

12.     ████████████████████████████████████████

██████████████. Ex. 1 (Baker Opening Rpt.) at ¶ 117; Ex. 2 (Baker Dep. Tr.) at 168:14-169:5, 174:3-6; Ex. 4 (Welch Rebuttal Rpt.) at ¶¶ 53-54, ¶ 65, ¶¶ 74-75; Ex. 6 (Imada 6/20/2024 Dep. Tr.) at 46:17-47:14, 51:18-24.

13.     The Accused Controllers ████████████████████████

████████████████████████████ Ex. 1 (Baker Opening Rpt.) at ¶¶ 117, 119, 122; Ex. 2 (Baker Dep. Tr.) at 164:14-22, 174:7-15; Ex. 4 (Welch Rebuttal Rpt.) at ¶¶ 56-59, ¶ 65, ¶¶ 76-79, ¶¶ 124-125.

14.     The Accused Controllers ████████████████████████

████████████████████████████████████████████

████████ Ex. 1 (Baker Opening Rpt.) at ¶¶ 117-119, 122, Ex. 2 (Baker Dep. Tr.) at 164:14-22, 169:6-12; Ex. 5 (Igarashi Dep. Tr.) at 39:5-9, 59:22-60:1; Ex. 6 (Imada 6/20/2024 Dep. Tr.) at 19:3-10, 51:18-52:4, 66:25-67:15.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**PlayStation 5 Console's Vibration Intensity Settings**

15.     A user must set the vibration settings for the DualSense controller on the PlayStation 5 console using the "Vibration Intensity" menu shown below:



Ex. 1, Baker Opening Rpt. at ¶ 108, ¶164, ¶ 206, ¶ 253; Ex. 2 (Baker Dep. Tr.) at 142:17-143:17; Ex. 4 (Welch Rebuttal Rpt.) at ¶ 141; Ex. 6 (Imada 6/20/2024 Dep. Tr.) at 29:15-20.  A user cannot adjust the vibration intensity without connecting to the PlayStation 5 console. Ex. 2 (Baker Dep. Tr.) at 146:6-11.

16.     The user must similarly set the vibration settings for the DualSense Edge and PSVR2 Sense controllers using menus on the PlayStation 5 console. Ex. 1, Baker Opening Rpt. at ¶ 109, ¶164, ¶ 206, ¶ 253; Ex. 2 (Baker Dep. Tr.) at 148:3-14; 150:4-151:1.

17.     Once a user selects a vibration intensity setting in the PlayStation 5 console's menu, ███████████████████████████████████████████████ Ex. 4 (Welch Rebuttal Rpt.) at ¶¶ 142-144; Ex. 6 (Imada 6/20/2024 Dep. Tr.) at 56:20-58:4.

18.     ████████████████████████████████████████

████████████████████████████████████████

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

████████████████████████████████████████ Ex. 4 (Welch Rebuttal Rpt.) at ¶¶ 142-

144; Ex. 5 (Igarashi Dep. Tr.) at 32:24-33:8, Ex. 6 (Imada 6/20/2024 Dep. Tr.) at 56:20-58:4.

**__Resonant's Infringement Theory__**

19.     Resonant identifies the MediaTek MT3616T/B or MediaTek MT3606T/B ("MCU") contained within the DualSense, DualSense Edge, and PSVR2 Sense controllers as the microcontroller that satisfies the "control component" limitation required by the Asserted Claims. Ex. 1 (Baker Opening Rpt.) at ¶ 107, ¶164, ¶ 206, ¶ 253; Ex. 2 (Baker Dep. Tr.) at 139:12-140:2.

20.     Resonant identifies the settings on the PlayStation 5 console's vibration intensity menu (e.g., Off, Weak, Medium, Strong) as the "mode" in step (a) of the "control component" algorithm and the corresponding value used to drive the haptic motors as the "strength" in step (a) of the control component algorithm. Ex. 2 (Baker Dep. Tr.) at 206:12-22.

21.     Resonant identifies ██████████████████████████████████████

████████████████████████████████████████████. Ex. 1 (Baker Opening Rpt.) at ¶ 114, ¶164, ¶ 206, ¶ 253; Ex. 2 (Baker Dep. Tr.) at 154:9-16, 155:12-20.

22.     Resonant cites ██████████████████████████████

██████████████████ Ex. 1 (Baker Opening Rpt.) at ¶ 116, ¶164, ¶ 206, ¶ 253; Ex. 2 (Baker Dep. Tr.) at 189:7-190:3, 195:19-196:12 ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**Houston**

23.     Figure 38 of U.S. 2011/0248817 to Houston ("Houston"), reproduced below, depicts a system 620, including a haptic interface 624, that has "an input device 636, which can detect user input and which can include buttons, joysticks, and pressure sensors." Ex. 7 (Houston) at [0218], Fig. 38.

24.     Houston's system 620 also includes a system controller 622 that "provides force commands to a haptic interface 624 that generates forces which result in force sensations being received by user 626." Ex. 7 (Houston) at [0217].

25.     Houston's haptic interface 624 sends user commands to system controller 622, and "[t]he user commands can be input through pressing buttons, moving joysticks, squeezing the haptic interface at various level forces, moving the haptic interface, applying force and torque onto the haptic interface and through other means." Ex. 7 (Houston) at [0214], Fig. 38.

## VI.    ARGUMENT

It is undisputed that the Accused Controllers (**SOF 1**) ████████████████████████

████████████████████████████████████████████████████████

████████    **SOF 4, 13-14**. As the Court explained at claim construction and further set forth below, the Asserted Claims all require the "control component" structure to be "contained within the vibrating module." Like the Houston reference distinguished during prosecution and on which the Court based its claim construction, the alleged "control component" of the Accused Controllers resides in the PlayStation 5 console and is separate from the vibrating module because the

████████████████████████████████████████████████████████

████████    There is no dispute as to how the Accused Controllers operate in this regard. This operation is contrary to the Court's claim construction and underlying rationale. Because no reasonable juror could find that the PlayStation 5 is "contained within the vibrating module," no

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

reasonable jury could find infringement, and Defendants are entitled to summary judgment.

### A.    The Court's Claim Construction Requires that the "Control Component" Must Be "Contained Within the Vibrating Module"

Every Asserted Claim requires "a control component." Independent claim 2 of the '337 Patent and independent claim 1 of the '081 Patent recite:

> A linear vibration module comprising …
>
> a control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by user input received from the user-input features[.]

Independent claims 1 and 20 of the '830 similarly recite:

> A vibration module comprising …
>
> a control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values[.]

The Court construed these limitations under 35 U.S.C. § 112, ¶ 6 as requiring the structure of "an oscillator circuit, a microcontroller with internal or external memory, a processor, a CPU, or a microprocessor **contained within the vibrating module** where the microcontroller, processor, CPU, or microprocessor are programmed with an algorithm comprising the following steps: (a) set the mode and strength to [default values or] values representing selections made by user input to the user input features; and (b) provide a corresponding output to the power supply so that the power supply provides a corresponding output to the driving component and equivalents thereof." **SOF 2** (emphasis added).

The basis for the Court's construction was a disclaimer made during the prosecution of the '830 Patent. Dkt. 107 at 11-13. There, the applicant distinguished over Houston by arguing that "the controller of Houston resides in a computer, and is separate from the vibrating device," which means that the "control component" limitation is not met because "the sensations felt by a user 626 are sent by a system controller 622 to a haptic interface 624." **SOF 3**. This can be seen below,

10

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

where the sensations felt by the user are sent by the system controller to the haptic interface as "force commands," and the haptic interface outputs those sensations to the user.



*Id.* at Fig. 38.

The Court found that "the applicant [of the '830 Patent] clearly and unmistakably characterized the 'system controller' and 'haptic interface' of Houston as 'separate units and not contained in a vibration module.'" Claim Construction Order (Dkt. 107) at 12-13 (citing '830 Patent File Wrapper, Dkt. No. 65-6 at 25–26). The Court further explained that "[a] skilled artisan would understand from those arguments that the claimed vibration module **requires a control component that is not separate and is contained within the module**, and that understanding is consistent with the specification's description of the control component's location." *Id.* at 13 (emphasis added). Regarding the claims of the '337 and '081 Patents, the Court stated that "the Court is hard-pressed to see how the applicants' characterization of 'module comprising' vis-à-vis Houston would not apply to the other claims. That is, a skilled artisan would consider the applicants' arguments as characterizing the invention as a whole, and would not read the various

11

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

claims as having such fundamentally different scope." *Id.* at 15. Accordingly, the Court's construction requires the "oscillator circuit, a microcontroller with internal or external memory, a processor, a CPU, or a microprocessor" programmed with a specific algorithm and that performs the claimed function to be "contained within the vibrating module."

Thus, to prove infringement of all Asserted Claims, Resonant must show that each of the Accused Controllers includes a control component that is not separate and is contained within the Accused Controllers and that is programmed with the required algorithm and performs the claimed construction. Resonant cannot do so here. Instead, Resonant must rely on █████████████████

██████████████████ to show that the "control component" function and structure are met. Defendants are entitled to summary judgment of noninfringement because Resonant is expressly accusing that which it disclaimed and that which is precluded by the Court's claim construction.[2]

**B.    The Accused Products Do Not Include "A Control Component" That Is "Contained Within The Vibrating Module"**

The relevant functionalities of the Accused Controllers are not disputed. The Accused Controllers are used to play games running on the PlayStation 5 console (**SOF 7**), which is a separate unit from the Accused Controllers (**SOF 6**). A user provides input to the PlayStation 5 console via the Accused Controllers (**SOF 8-9**), and ███████████████████

███████████████████████████ (**SOF 10**).[3] ████████

████████████████████████████████████████

████████████████████████████████████████

████████████

---

[2] Defendants are concurrently filing a Daubert motion to exclude Dr. Baker's testimony as contradicting the Court's claim construction of "control component."

[3] Notably, ██████████

████████████████ **SOF 11**.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

The operation of the Accused Controllers and the PlayStation 5 console is identical in relevant parts to the system depicted in Figure 38 of Houston distinguished by the applicant during prosecution. Namely, the user provides inputs using the input devices (e.g., buttons) on the Accused Controller (**SOF 8**), which is analogous to Houston's haptic interface 624 receiving inputs via input device 636 (**SOF 23**). ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

This operation is what was distinguished during prosecution and why the Court construed "control component" to be "contained within the vibrating module." This is contrast to the

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Accused Controllers.  Like Houston's system controller and haptic interface, the PlayStation 5 console and the Accused Controllers are "separate units and not contained in a vibration module." Resonant cannot now accuse that which it expressly disclaimed during prosecution, which is reflected in the Court's claim construction. Accordingly, Resonant cannot show that the Accused Controllers include a control component that is contained within the vibration module under the Court's claim construction.

The foregoing undoubtedly establishes that the Accused Controllers do not include a "control component" that is "contained within the vibrating module." To the extent there is any doubt, this can also be seen in the simple, undisputed fact that the Accused Controllers cannot provide any vibration feedback, even if turned on and a user is pressing buttons, unless the Accused Controllers are connected to a PlayStation 5 and playing a game that provides that functionality. **SOF 5**. This demonstrates beyond question that there is no structure in the Accused Controllers programmed with the required algorithm because if there were, the Accused Controllers could perform the claimed function (i.e., "cause the moveable component to oscillate [i.e., vibrate]") on their own and without interacting with a game on the PlayStation 5 console. They cannot. **SOF 5**. Moreover, Dr. Baker, and Resonant would simply point to an identifiable algorithm with which the Accused Controllers are programmed that perform the necessary steps and function.  They do not and cannot.

Defendants, therefore, respectfully ask the Court to enter a finding that the Accused Controllers do not infringe the Asserted Patents.

**C.  Resonant's Infringement Theories Are Based On** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**.**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Resonant's infringement theories further reinforce the foregoing because Resonant must rely on functions undisputedly performed by the PlayStation 5 console to show that the "control component" limitation is met.

Resonant identifies the MediaTek MT3616T/B or MediaTek MT3606T/B ("MCU") contained within the DualSense, DualSense Edge, and PSVR2 Sense controllers as the microcontroller that satisfies the structure of the "control component" limitation required by the Asserted Claims. **SOF 19**. The Court's construction requires the MCU that is "contained within the vibrating module" (i.e., the Accused Controllers) to be programmed to perform two steps: "(a) set the mode and strength to [default values or] values representing selections made by user input to the user input features; and (b) provide a corresponding output to the power supply so that the power supply provides a corresponding output to the driving component and equivalents thereof," and perform the function of "controlling supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by [user input received from the user-input features / one or more stored values]." **SOF 2**. The MCU of the Accused Controllers, therefore, must be programmed to perform each of these steps.

Resonant identifies two features as allegedly meeting the function and structure required by the construction of "control component." Each of these functions ████████████ ████████████████████████████████████████████████ ██████

***First***, Resonant's expert, Dr. Baker, identifies the settings on the PlayStation 5 console's vibration intensity menu (e.g., Off, Weak, Medium, Strong) as meeting the "set[ting] the mode" (i.e., step (a)) requirement of the required algorithm. **SOF 20**. The vibration intensity menu, shown below, is undisputedly a feature of the PlayStation 5 console:

15

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**



**SOF 15-16**. Once a user selects a setting, ████████████████████████████████████████

████████████████████████████████████████████████████████████. **SOF 17-18**.

████████████████████████████████████████████████████████

████████

Because ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

**SOF 17-18**.

        ***Second,*** Resonant identifies ████████████████████████████████████████

as including the frequency and amplitude at which the moveable component oscillates. **SOF 2121**.

It appears that Resonant is relying on ████████████████ to show that the MCU of the Accused

Controllers performs the function of "controlling supply of power from the power supply to the

driving component to cause the moveable component to oscillate at a frequency and an amplitude

specified by [user input received from the user-input features / one or more stored values]."

Regardless, it is undisputed that ████████████████████████████████████████████████

16

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

█████████████████████████████████████████ **SOF 4, 10-13**. Indeed, Resonant's

expert, Dr. Baker, identified ██████████████████████████ evidence of the

"control component" limitation. **SOF 22**.



███████████████ **SOF 14**. The PlayStation 5 console is not "contained within the

vibrating module," and Resonant cannot rely on ████████████████████████

███████████████ to show that the claimed function is met. Regardless of the infringement

theory, Resonant cannot escape the fact that ████████████████████████

████████████████████████████████████████████

██████████). This is contrary to the Court's claim construction.

On these undisputed facts, Defendants are entitled to summary judgment of non-infringement.

**VII.    CONCLUSION**

For the foregoing reasons, there is no genuine dispute as to any material fact and Defendants respectfully request entry of summary judgment of non-infringement as to all Asserted Claims.

Date:    September 10, 2024

_/s/ Mark C. Lang_
Eric A. Buresh
Mark C. Lang
ERISE IP, P.A.
7015 College Blvd, Suite 700
Overland Park, KS 66211
Email: eric.buresh@eriseip.com
Email: mark.lang@eriseip.com
Telephone: (913) 777-5600
Facsimile: (913) 777-5601

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Abran J. Kean (Pro Hac Vice)
5299 DTC Blvd., Suite 1340
Greenwood Village, CO 80111
Email: abran.kean@eriseip.com
Telephone: (913) 777-5600
Facsimile: (913) 777-5601

Melissa Smith
Texas State Bar No. 24001351
James Travis Underwood
Texas State Bar No. 24102587
melissa@gillamsmithlaw.com
travis@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

*Counsel for Defendants Sony Group Corporation and Sony Interactive Entertainment Inc.*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

<u>**CERTIFICATE OF SERVICE**</u>

     The undersigned counsel hereby certifies that on September 10, 2024, a true and correct copy of the foregoing was served via email on all attorneys of record.

<u>*/s/ Mark C. Lang*</u>
Mark C. Lang
